Arthur SANTISTEVEN,
Petitioner–Appellee,

v.

Harold Benny JOHNSON, Superintendent, Fremont Correctional Facility,
Respondent–Appellant.

No. 86SA222.

Supreme Court of Colorado,
En Banc.

March 7, 1988.

Rehearing Denied April 4, 1988.

David F. Vela, State Public Defender, Thomas R. Williamson, Deputy State Public Defender, Denver, for petitioner-appellee.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Terrence A. Gillespie, Asst. Atty. Gen., Denver, for respondent-appellant.

KIRSHBAUM, Justice.

Appellant Harold Benny Johnson, Superintendent of the Fremont Correctional Facility (Superintendent), appeals a trial court order requiring the Department of Corrections (the Department) to grant appellee, Arthur Santisteven (Santisteven), certain credits for periods of confinement against the mandatory release date established by the Department with respect to two consecutive sentences imposed upon Santisteven in 1978. The Superintendent contends that Santisteven is not entitled to the credits claimed. We agree, and therefore reverse and remand with directions.

I

On August 21, 1978, following convictions upon guilty pleas entered in Jefferson County District Court to two counts alleging the commission of theft in violation of section 18-4-401, 8 C.R.S. (1973), Santisteven was committed to the custody of the Department to serve two consecutive two-to-ten year sentences. The Parole Board granted Santisteven parole on those sentences on July 1, 1980.

On March 19, 1981, Santisteven was arrested and incarcerated in Denver, Colorado, for allegedly having committed the offenses of second degree murder and violent crime. Santisteven was charged with these offenses in Denver District Court, and thereafter a parole detainer was filed against him. Santisteven was later convicted by a jury of the offense of manslaughter, as defined by section 18-3-104, 8 C.R.S. (1978), and was sentenced on November 12, 1981, to the custody of the Department for a term of seven years plus one year of parole. The mittimus issued by the trial court contains the finding that Santisteven had spent 241 days in presentence confinement prior to November 12, 1981.

On December 2, 1981, the Parole Board revoked Santisteven's parole on the 1978 sentences. The manslaughter conviction was subsequently overturned,[1] and on January 17, 1985, the Parole Board reinstated Santisteven's parole status.

On February 27, 1985, Santisteven was arrested and incarcerated in Denver for allegedly having committed additional offenses. He was subsequently charged in Denver District Court with having committed two offenses of forgery, as defined by section 18-5-103, 8 C.R.S. (1978), and a parole detainer was then filed against him. Santisteven testified that the filing of this detainer prevented him from being able to post a bond for his release pending trial.[2] On October 7, 1985, after having been convicted by a jury of these two offenses, Santisteven received two concurrent three-year sentences. The mittimus issued by the trial court contains an order that Santisteven "is given credit for 223 days presentence confinement and good time." Prior to that date, on September 12, 1985, the Parole Board revoked Santisteven's parole on the 1978 sentences.

When Santisteven was returned to the custody of the Department in 1985, the

---

1. *People v. Santisteven,* 693 P.2d 1008 (Colo.App. 1984).

2. This fact is not disputed by the parties. The record does not contain copies of either of the parole detainers filed against Santisteven. However, the parties do not dispute their contents.

Department recalculated his mandatory release date and established that date as October 29, 1989.[3] In making this recalculation, the Department did not give Santisteven credit for any of the periods of time in 1981 and 1985 during which he was incarcerated in Denver awaiting disposition of criminal charges filed against him in that jurisdiction.

On April 2, 1986, Santisteven filed a writ of habeas corpus alleging, *inter alia*, that he was entitled to immediate release from custody and that he was entitled to an order requiring the Department to recalculate his mandatory release date on his 1978 sentences by granting him credit for the periods of time he was incarcerated in Denver in 1981 and 1985. On April 28, 1986, following a hearing, the Fremont County District Court ordered the Department to recalculate Santisteven's mandatory discharge date from his 1978 sentences by including credits totaling one year, two months and twenty-five days to reflect his 1981 and 1985 periods of confinement in Denver.[4] The Superintendent has appealed only that portion of the trial court's order requiring the Department to grant Santisteven credit for the six months and twelve days in 1985 during which he was incarcerated in Denver.

## II

The Superintendent asserts that the Department is prohibited by section 17–22.-5–203, 8A C.R.S. (1986), from awarding credit to Santisteven against his 1978 sentences for the time he was incarcerated in 1985 awaiting trial on the Denver forgery charges.[5] We agree.

The statute contains the following language:

> **Time of parole not considered when inmate is reincarcerated.** (1) The paroled inmate, upon an order of the state board of parole, may be returned to the custody of the department according to the terms of his original sentence, and, in computing the period of his confinement, the time between his release and his return to said custody shall not be considered any part of the term of his sentence.

§ 17–22.5–203(1), 8A C.R.S. (1986). The statute appears to represent an effort by the General Assembly to deter parolees from violating the terms of their parole agreements. It treats the period during which the prisoner was on parole status as non-existent for purposes of ascertaining the extent to which the person has satisfied a previously imposed sentence. As a result, it prohibits any award of credit against the original sentence for any time a person is on parole status if that status is terminated by order of the parole board prior to the expiration of the period of parole.[6]

**3.** The Department determined that Santisteven's two 1978 consecutive sentences and his two concurrent 1985 sentences must be treated as one continuous sentence and must be deemed the basis for determining his mandatory release date. *See* § 17–22.5–101, 8A C.R.S. (1986).

**4.** It is not clear how the trial court reached this figure. Santisteven argued that he was entitled to eight months and three days of credit against his 1978 sentences for the time he was incarcerated in 1981 with regard to the charge of second degree murder. The eight months and three days represented the period of time beginning with Santisteven's arrest on March 19, 1981, and ending with his sentencing on the manslaughter conviction on November 12, 1981. He also argued that he was entitled to credit against his 1978 theft sentences for the period of six months and twelve days during which he was incarcerated in 1985 with regard to forgery charges, representing the period of time beginning on February 28, 1985, the day after his arrest, and ending on September 12, 1985, the day his parole status was revoked. The sum of these two time spans is one year, two months and fifteen days.

**5.** The Superintendent initially relied upon § 17–2–205, 8 C.R.S. (1978), as authority for the prohibition against an award of credit in these circumstances. However, § 17–22.5–203 is applicable to persons sentenced for crimes committed prior to July 1, 1979. Act approved April 13, 1984, 1984 Colo.Sess.Laws, ch. 126, § 1, p. 520.

**6.** The statute does not specify whether the phrase "return to said custody" refers to the date the person's parole is revoked by order of the Parole Board and/or some other date, such as the date the person is committed to the custody of the Department as the result of the imposition of sentence for an offense committed during the period of parole. In this case the De-

In *People v. Martinez,* 728 P.2d 363 (Colo.App.1986), the Colorado Court of Appeals reached a similar conclusion in analyzing the substantially similar language of section 17–2–205, 8 C.R.S. (1978). Santisteven argues that the reasoning of *Martinez* is inapplicable to him because section 17–22.5–203 must be construed to grant him rights to credit denied by its predecessor, section 17–2–205. He first asserts that different language in the current statute compels this conclusion. He also argues that the provisions of section 16–11–306, 8 C.R.S. (1985 Supp.), must be considered when construing section 17–22.5–203 and that, when the two statutes are read together, his proposed interpretation of section 17–22.5–203 becomes compelling. Finally, he argues that section 17–22.5–203 must be construed to deny credit for no more than thirty days when read in conjunction with section 17–2–103(7), 8A C.R.S. (1986). We find these arguments unpersuasive.

Section 17–2–205, the predecessor of section 17–22.5–203, contained the following language:

> **Time of parole not considered when convict is reincarcerated.** The paroled convict who, upon the order of the board, may be returned to the penitentiary shall be retained therein according to the terms of his original sentence, and in computing the period of his confinement the time between his release upon said permit and his return to said penitentiary shall not be taken to be any part of the term of the sentence.

§ 17–2–205, 8 C.R.S. (1978). Santisteven argues that the substitution of the word "custody" in section 17–22.5–203 for the word "penitentiary" in section 17–2–205 signifies a legislative intent to expand a parolee's right to receive credit for confinement prior to parole revocation and requires the Department to exclude only the period of time between the parolee's date of arrest and the date a parole detainer is filed when calculating credits against sentences to be served by the parolee. We do not agree that the substitution of the word "custody" for the word "penitentiary" evidences any such fundamental change in legislative policy. The new statute, as did the old, seeks by unambiguous language to discourage criminal conduct by persons granted parole status. Adoption of Santisteven's proposed construction would severely dilute the disincentive to criminal conduct established by section 17–22.5–203. We reject such construction.

■ Relying upon our decision in *Schooley v. Wilson,* 150 Colo. 483, 374 P.2d 353 (1962), Santisteven asserts that for purposes of section 17–22.5–203 he must be deemed to have been in the custody of the Department from the time the parole detainer was lodged against him. In *Schooley,* a parolee was arrested and incarcerated on the basis of an alleged parole violation. He remained confined for a period of time in excess of the maximum time permitted by the then applicable statutes governing detention prior to parole revocation. In concluding that this violation of the statute required release of the parolee, we noted a distinction between the "constructive" custody exercised by the state over a person on parole status and the "physical" custody exerted over a person arrested and confined on the basis of an allegation of a parole violation.

The analysis employed in *Schooley* is not applicable to this case, however. The defendant's detention in that case was initiated by the Parole Board. Santisteven was arrested and confined for acts of forgery by Denver authorities and remained in the physical custody of Denver authorities until his parole was revoked in September of 1985. Only after Santisteven was transferred to the Department did the Department begin to exercise physical custody over him. *See Castro v. District Court,* 656 P.2d 1283 (Colo.1982).

Santisteven argues that section 17–22.5–203(1), when construed together with section 16–11–306, 8 C.R.S. (1985 Supp.), does not prohibit credit for a parolee's presentence confinement during that period of

---

partment credited Santisteven's 1978 sentences with all time served in 1985 subsequent to the

date his parole was revoked; we, therefore, need not address this question.

time between the arrest and the revocation of parole. We disagree.

Section 16–11–306 states as follows:

**Credit for presentence confinement.** A person who is confined prior to the imposition of sentence is entitled to credit against the term of his sentence for the entire period of such confinement. At the time of sentencing, the court shall make a finding of the amount of presentence confinement to which the offender is entitled and shall include such finding in the mittimus. Such period of confinement shall be deducted from the sentence by the department of corrections.

Section 16–11–306, 8 C.R.S. (1985 Supp.).[7] By its terms, the statute applies to persons who, having been charged with and ultimately convicted of criminal conduct, remain in confinement prior to the ultimate disposition of those charges. In *Schubert v. People*, 698 P.2d 788 (Colo.1985), we held that section 16–11–306 created a right to credit only with respect to the presentence confinement served in connection with the charge or conduct for which a particular sentence is ultimately imposed. Although *Schubert* was decided in the context of a challenge to the authority of a trial judge to order or refuse to order credit for presentence confinement against a particular sentence, its rationale is fully applicable to the facts of this case.

The defendant in *Schubert* was participating in a work release program as part of a sentence imposed by the Boulder County District Court in an earlier case

when he initially appeared to answer charges of burglary in Jefferson County District Court. He was unable to make bond. When he was later sentenced on the burglary charges, he argued that section 16–11–306 required the trial court to grant credit on the burglary sentences for the period of time from his initial appearance in Jefferson County District Court to the date of that court's imposition of sentence, including time he spent in the Boulder County Jail, in the Boulder County work release program and in a Boulder community corrections facility in connection with charges pending against him in the Boulder County District Court. In rejecting his argument, this court held that the credit provided by the statute did not apply to confinement or detention absent a substantial nexus to the charges underlying the sentence actually imposed. Santisteven was given credit on the sentence imposed on the forgery charges for which he was being held in 1985. He is not entitled to additional credit on the unrelated 1978 sentences.

Santisteven asserts, however, that the parole detainer filed against him in 1985 was the true cause of his presentence confinement at that time and, therefore, that under *Schubert* there was a substantial nexus between his 1978 conduct and his 1985 presentence confinement. This argument ignores the fact that the parole detainer primarily served to notify appropriate authorities that Santisteven was subject to proceedings for an alleged parole violation. *See Torand v. People*, 698 P.2d

---

**7.** In 1986, the General Assembly adopted a revised section 16–11–306, containing the following language:

    **Credit for presentence confinement.** A person who is confined for an offense prior to the imposition of sentence for said offense is entitled to credit against the term of his sentence for the entire period of such confinement. At the time of sentencing, the court shall make a finding of the amount of presentence confinement to which the offender is entitled and shall include such finding in the mittimus. Such period of confinement shall be deducted from the sentence by the department of corrections.

Section 16–11–306, 8A C.R.S. (1986).

Santisteven contends that this version of section 16–11–306 governs this case. However, the 1986 version of section 16–11–306 applies only

to proceedings commenced on or after July 1, 1986. Act approved April 17, 1986, 1986 Colo. Sess.Laws ch. 124, § 7, p. 735. All relevant proceedings in this case, including the hearing held on Santisteven's writ of habeas corpus, occurred prior to July 1, 1986. Thus, the 1986 version of the statute does not apply to this case.

    The version of § 16–11–306 governing Santisteven's claim was adopted in 1979 and made applicable to offenses committed on or after July 1, 1979. Act approved March 29, 1979, 1979 Colo.Sess.Laws ch. 157, § 25, p. 672. The prior statute applied to offenses committed before that date. *See Godbold v. District Court*, 623 P.2d 862 (Colo.1981); *People v. McKenna*, 199 Colo. 452, 611 P.2d 574 (Colo.1980). The forgery offenses resulting in Santisteven's confinement in Denver were committed in 1985.

797 (Colo.1985), (citing *Cuyler v. Adams*, 449 U.S. 433, 436 n. 3, 101 S.Ct. 703, 706 n. 3, 66 L.Ed.2d 641 (1981); *Dobson v. United States*, 449 A.2d 1082, 1085 (D.C.App.1982), *cert. denied*, 464 U.S. 831, 104 S.Ct. 109, 78 L.Ed.2d 111 (1983)). The fact that he was unable to post bond and thereby gain release from that custody because of the parole detainer cannot obscure the fact that his detention resulted from his commission of new criminal acts wholly unrelated to his conduct in 1978. Moreover, the filing of the detainer was also occasioned by conduct that occurred in 1985— conduct resulting in two forgery convictions. While there is an indirect relationship between Santisteven's 1985 incarceration and his 1978 convictions, that relationship is not so substantial as to be deemed a source of his incarceration.

The Department properly credited Santisteven with the presentence confinement he incurred in 1985 against the sentence imposed for the forgery offenses with which he was charged at that time. Section 16–11–306 furnishes no support for Santisteven's argument that the provisions of section 17–22.5–203 do not prohibit the Department from granting him credit against his 1978 sentences for his 1985 confinement in Denver.

Section 17–2–103(7), 8A C.R.S. (1986), requires the Department to conduct a revocation hearing within thirty days of the arrest of a parolee when the arrest is made on one of the grounds specified in section 17–2–103(4) or section 17–2–103(5)(c).[8] Santisteven argues that because the statute does not allow a parolee to remain incarcerated more than thirty days when the arrest was made in response to an alleged violation of parole, no more than thirty days should be excluded from calculations of credit against a parolee's sentences. This argument was never presented to the trial court and, therefore, need not be considered on appeal. *People v. Duemig*, 620 P.2d 240 (Colo.), *cert. denied*, 451 U.S. 971, 101 S.Ct. 2048, 68 L.Ed.2d 350 (1981); *Wittington v. Bray*, 200 Colo. 92, 613 P.2d 633 (1980); *Dorador v. Cronin*, 199 Colo. 85, 605 P.2d 53 (1980). The policy of section 17–2–103(7) to encourage rapid resolution of alleged parole violations provides no support for the suggestion that section 17–22.5–203(1) suspends credit for a maximum of thirty days. The statutes address different problems, and cannot be construed together. In our view, Santisteven has no greater rights to presentence confinement credit under section 17–22.5–203(1) than he did under its predecessor, section 17–2–205.

### III

For the foregoing reasons, we reverse the judgment of the trial court insofar as it orders the Department to grant Santisteven six months and twelve days of credit on his 1978 sentences. The case is remanded to the trial court with directions to amend its April 28, 1986, order to conform to this opinion.

VOLLACK, J., does not participate.

---

**8.** It is not certain that section 17–2–103(7) applies to persons such as Santisteven who are arrested and incarcerated by persons other than representatives of the Department. By its terms, the statute applies only to parolees arrested pursuant to sections 17–2–103(4) and 17–2–103(5)(c), 8A C.R.S. (1986). Section 17–2–103(4)(a) states as follows:

If, rather than issuing a summons, a parole officer makes an arrest of a parolee, with or without a warrant, or the parolee is otherwise arrested, the parolee shall be held in a county jail pending action by the parole officer pursuant to subsection (5) of this section.

If the phrase "otherwise arrested" in this section refers to all parolees taken into custody by local law enforcement agents, it could be argued, as Santisteven implies, that such a parolee must be given a revocation hearing within the time periods provided by section 17–2–103(7), with the result that a determination of whether the parolee violated the terms of the parole agreement could precede any determination of whether the parolee committed the offense with which he was charged. We do not address this issue here.