The PEOPLE of the State of
Colorado, Petitioner,

v.

Randolph HOECHER, Respondent.

The PEOPLE of the State of
Colorado, Petitioner,

v.

Frank GAMINO, Jr., Respondent.

The PEOPLE of the State of
Colorado, Petitioner,

v.

Christopher ANDERSON, Respondent.

Nos. 90SC601, 90SC749 and 90SC769.

Supreme Court of Colorado,
En Banc.

Dec. 9, 1991.

Gale A. Norton, Atty. Gen., Raymond T.
Slaughter, Chief Deputy Atty. Gen., Timo-

thy M. Tymkovich, Sol. Gen., Robert M. Petrusak, Asst. Atty. Gen., Denver, for petitioner.

David F. Vela, Colorado State Public Defender, Janet Fullmer Youtz, Deputy State Public Defender, Denver, for respondent Hoecher.

David F. Vela, Colorado State Public Defender, Martin J. Gerra, Deputy State Public Defender, Denver, for respondent Gamino.

Robert Justin Driscoll, Denver, for respondent Anderson.

Justice QUINN delivered the Opinion of the Court.

■ These three cases raise a single issue: whether a defendant who is originally sentenced to a community correctional facility for a definite term, serves part of the sentence as a resident of the facility, is thereafter released from the facility and is permitted to serve the remainder of his sentence as a nonresident, and subsequently violates a rule or condition of the community correctional placement, is entitled upon resentencing to credit for that period of time during which the defendant was serving the remaining part of his sentence as a nonresident of the community correctional facility. In *People v. Hoecher*, 804 P.2d 230 (Colo.App.1990), *People v. Anderson*, (Colo.App. No. 89CA1299, August 30, 1990) (not selected for official publication), and *People v. Gamino*, (Colo.App. No. 89CA1392, October 25, 1990) (not selected for official publication), the court of appeals held that the resentencing court must credit the defendant with that part of the community correctional sentence served on nonresidential status. We granted the People's petition for certiorari in each case, and we now reverse the judgment of the court of appeals.[1]

In *Hoecher*, 804 P.2d 230, the defendant pled guilty to first degree criminal trespass, a class 5 felony,[2] and was sentenced to the Restitution Center in Greeley, Colorado, a community correctional facility, for a term of three years. Hoecher was a resident in the facility from October 27, 1987, to April 28, 1988, when the administrator of the facility permitted him to serve out the remainder of his sentence as a nonresident. Hoecher's nonresidential status was later terminated because he used drugs and alcohol in violation of the terms of his community correctional placement. On November 1, 1988, the district court resentenced Hoecher to the custody of the Department of Corrections for a term of three years. The court gave Hoecher presentence-confinement credit for 461 days, which represented the county-jail time prior to the community correctional sentence, the time served as a resident of the community correctional facility, and the time served in jail between the termination of Hoecher's nonresidential status and the date of resentencing. The court, however, refused to credit Hoecher with the period of time which he served on nonresidential status. Hoecher appealed to the court of appeals, which reversed the sentence, reasoning that the district court's "refusal to give defendant credit for the non-residential time served in community corrections is 'tantamount to increasing his sentence' " in violation of section 17–27–114(2), 8A C.R.S. (1991 Supp.). 804 P.2d at 231 (quoting *People v. Kastning*, 738 P.2d 807 (Colo. App.1987)). The court of appeals remanded the case to the district court with directions to credit Hoecher with an additional 100 days for time served on nonresidential status.

In *Anderson*, the defendant pled guilty

---

1. Hoecher argues that we should discharge the writ of certiorari as improvidently granted because he has already served his sentence. The issue of credit for nonresidential community corrections offenders, however, certainly has an impact on future defendants in similar situations. The question of law involved, although moot as to Hoecher, will nonetheless have a significant effect on similar cases in the future.

*See Massey v. People,* 736 P.2d 19, 20–21 (Colo. 1987). We choose, therefore, to address the correctness of the court of appeals' decision in *Hoecher,* a published opinion and the basis for the court of appeals' subsequent unpublished opinions in *Anderson* and *Gamino.*

2. § 18–4–502, 8B C.R.S. (1986).

to criminal impersonation, a class 5 felony,[3] and was sentenced to the Arapahoe County Treatment Center, a community correctional facility, for a term of four years. Anderson remained a resident in the facility from November 23, 1987 to May 6, 1988, when he was placed on nonresidential status. Anderson's nonresidential status was terminated on November 14, 1988, for using illegal drugs, and he was placed in the custody of the Arapahoe County Sheriff's Department pending resentencing by the district court. On January 13, 1989, the court resentenced Anderson to the custody of the Department of Corrections for a term of four years, giving him credit for the time served on residential status in the community correctional facility and in the Arapahoe County Jail but denying credit for the period of time served as a nonresident. Anderson appealed his sentence to the court of appeals, which reversed the sentence, relying on its decision in *Hoecher*, 804 P.2d 230, and remanded the case to the district court with directions to credit Anderson with the time he served on nonresidential status.

In *Gamino*, the defendant pled guilty to the class 5 felony of driving a motor vehicle after he had been adjudicated an habitual traffic offender and his license had been revoked.[4] The district court sentenced Gamino to the Larimer County Corrections Department for a period of two years. He served approximately three months of the sentence as a resident of the community correctional facility and then was placed on nonresidential status. As a nonresident, Gamino was required to participate in a rehabilitative program and to report periodically to the community correctional facility, but he failed to do so. Gamino's community correctional placement was terminated, and the district court resentenced him to the Department of Corrections for a term of two years. The court credited Gamino with the time served as a resident of the community correctional facility, but denied credit for approximately 337 days served as a nonresident. Gamino appealed to the court of appeals, which reversed the sentence on the basis of its decision in *Hoecher*, 804 P.2d 230, and remanded the case to the district court with directions to credit Gamino with the time he served on nonresidential status.

■ The People petitioned for certiorari in each of the three cases, and we granted the petitions in order to consider whether these defendants were entitled upon resentencing to presentence-confinement credit for that part of the community correctional sentence served as a nonresident. For reasons hereafter discussed, we conclude that the defendants are not entitled to credit for nonresidential time.[5]

---

3. § 18–5–113, 8B C.R.S. (1986 & 1991 Supp.). When Anderson entered his guilty plea, criminal impersonation was a class 5 felony, but presently is classified as a class 6 felony. Ch. 148, sec. 54, § 18–5–113, 1989 Colo.Sess.Laws 834.

4. § 42–2–206, 17 C.R.S. (1984 & 1991 Supp.). When Gamino entered his guilty plea in 1987, the offense to which he pled was a class 5 felony. Presently, driving after revocation as a habitual offender is a class 6 felony. Ch. 120, sec. 8, § 42–2–206(1), 1990 Colo.Sess.Laws 941.

5. Prior to the court of appeals' decision in *Hoecher*, the court addressed the issue of credit for time served on nonresidential status in *People v. Herrera*, 734 P.2d 136 (Colo.App.1986). Herrera was originally sentenced to a community correctional facility for one year to be followed by one year of probationary supervision, which the trial court characterized as "parole". The defendant served the one-year sentence and later, after serving four months of nonresidential probation, violated the conditions of his probationary supervision. The trial court resentenced the defendant to a term of one year to the Department of Corrections plus one year of parole. The court of appeals vacated the sentence and remanded the case to the trial court with directions to resentence the defendant "not to exceed the unexpired portion of the original supervision period, less appropriate credits." *Id.* at 138. The effect of the court of appeals' decision was to credit the defendant with the time served on nonresidential status.

The court of appeals again addressed the issue of credit for time served on nonresidential status in *People v. Carroll*, 779 P.2d 1375 (Colo.App. 1989). Carroll was originally sentenced to a four-year term in a community correctional facility. After serving approximately ten months of the sentence, the trial court reduced the sentence, and the defendant thereafter was released from the residential facility and placed on post-release supervision for the duration of his sentence. Six months later the defendant violated the conditions of his post-release supervision

We begin our analysis with a review of the statutory scheme creating community correctional facilities and programs. §§ 17–27–101 to –116, 8A C.R.S. (1986 & 1991 Supp.). A community correctional facility or program is defined as follows:

> [A] community-based or community-oriented facility or program: Which is operated either by a unit of local government, the department [of corrections], a private nonprofit agency or organization, or any corporation, association, or labor organization; which may provide residential accommodations for offenders; and which provides programs and services to aid offenders in obtaining and holding regular employment, in enrolling in and maintaining academic courses, in participating in vocational training programs, in utilizing the resources of the community in meeting their personal and family needs and providing treatment, and in participating in whatever specialized programs exist within the community.

§ 17–27–102(1), 8A C.R.S. (1986). The purpose of sentencing a defendant to a community correctional facility or program is " 'to limit confinement to the extent necessary to assure reasonable supervision while permitting a gradual reintegration of the offender into the society to which the offender would eventually return.' " *Wilson v. People,* 747 P.2d 638, 640 (Colo.1987) (quoting *ABA Standards for Criminal Justice,* Sentencing Alternatives and Procedures, Standard 18–2.4, Commentary at 102 (1986 Supp.)). Consistent with this purpose, community correctional facilities and programs make use of a variety of different approaches, including halfway houses and work release, in addressing the educational, vocational, and treatment needs of offenders placed in the facility or program by the sentencing court. A community correctional placement thus provides a sentencing court with a sentencing alternative that is more severe than probation, but not as harsh as a sentence to imprisonment in a correctional facility under the control of the Department of Corrections. *People ex rel. VanMeveren v. Dist. Court of Larimer County,* 195 Colo. 34, 36, 575 P.2d 4, 6 (Colo.1978).

Before a community correctional facility or program is available as a sentencing alternative, the chief probation officer and the local government or nongovernmental agency operating the facility or program must recommend guidelines, subject to the approval of the chief judge of the judicial district and the judicial department, pertaining to the use of the facility or program. § 17–27–105(2)(a), 8A C.R.S. (1986). Section 17–27–103(3), 8A C.R.S. (1991 Supp.), authorizes the corrections board of the local unit of government to establish and enforce standards for the operation of the correctional facility and program and also to develop standards for the conduct of offenders. Such standards can include the criteria by which an offender sentenced to a community correctional facility becomes eligible for release from the facility as a nonresident in order to serve out the remainder of the sentence imposed by the court. In keeping with the basic goal of community correctional placement, a sentencing court is authorized to sentence a nonviolent felony offender to either a residential or nonresidential community correctional facility or program. § 17–27–105(1)(a), 8A C.R.S. (1986). A sentence to a community correctional facility or program, however, is not final until the corrections board of the local governmental unit accepts the offender for placement in the facility or program. § 17–27–103(3), 8A C.R.S. (1991 Supp.).

Once an offender has been sentenced to a community correctional facility and has

---

and was resentenced to a new four-year sentence, reduced only by the time served by the defendant *as a resident* in the community correctional facility. The court of appeals affirmed the trial court's refusal to credit the defendant with time served on nonresidential status. In so holding, the court of appeals distinguished *Herrera* on the basis that Carroll's supervisory period was not part of his original sentence and, therefore, the trial court's "refusal to credit this time against the second sentence did not result in a new sentence which exceeded the length of the first." *Id.* at 1376.

We expressly overrule *Herrera* and reject the rationale offered in *Carroll* for distinguishing *Herrera.* Neither Herrera nor Carroll was entitled to credit for time served on nonresidential status.

been accepted for placement in the facility, the offender is permitted to remain in community correctional placement only so long as he abides by all rules and regulations pertaining to his placement. Section 17–27–114(1), 8A C.R.S. (1986), makes this quite clear by providing, in pertinent part, as follows:

> Where the administrator of a community correctional facility or any other appropriate supervising authority has cause to believe that an offender placed in a community correctional facility has violated any rule or condition of his placement in that facility ..., the administrator or other authority shall certify to the appropriate judicial ... authority the facts which are the basis for his belief and execute a transfer order to any sheriff ... to transport the offender to the county jail in the county in which the facility is located where he shall be confined pending a determination by the appropriate court ... as to whether or not the offender shall remain in community corrections.

If the sentencing court determines that the offender shall not remain in community corrections, the court is authorized to resentence the offender and "impose any sentence which might originally have been imposed without increasing the length of the original sentence." § 17–27–114(2), 8A C.R.S. (1991 Supp.). The statutory scheme, however, is silent on the issue of credit for presentence confinement upon resentencing. We look, therefore, to the general statutory provisions regarding an offender's entitlement to presentence-confinement credit.

Section 16–11–306, 8A C.R.S. (1986), states that "[a] person who is confined for an offense prior to the imposition of sentence for said offense is entitled to credit against the term of his sentence for the entire period of such confinement." To be eligible for presentence-confinement credit, an offender must have been actually confined prior to the ultimate disposition of the criminal charge and there must have been a substantial nexus between the confinement and the charge for which the sentence is ultimately imposed. *E.g., Santis-*

*teven v. Johnson*, 751 P.2d 621, 625 (Colo. 1988); *Schubert v. People*, 698 P.2d 788, 795 (Colo.1985). An offender sentenced to a community correctional facility is confined in a very real sense during the period of time in which the offender remains on residential status. *See People v. Saucedo*, 796 P.2d 11, 12 (Colo.App.1990). Even if released for work or other rehabilitation activity, such offender would be substantially restricted in his freedom of movement and range of activity and would be duty-bound to return to the community correctional facility each day upon completion of the limited-release program. Furthermore, there is no question that there would be a substantial nexus between the offender's confinement and the criminal conviction for which the offender is to be resentenced. A court about to resentence such offender for violating the conditions of the community correctional placement, therefore, should credit the offender for the time served as a resident of a community correctional facility. A court's failure to grant such credit would be tantamount to increasing the length of the original sentence in violation of section 17–27–114(2), 8A C.R.S. (1991 Supp.). *See People v. Kastning*, 738 P.2d 807 (Colo.App.1987).

The same analysis is not applicable to that part of a community correctional sentence served while the offender is on nonresidential status. An offender serving a community correctional sentence as a nonresident of the community correctional facility is not substantially different from an offender paroled from a prison or reformatory. Although a parolee is subject to many restrictions "not applicable to other citizens, his condition is very different from that of confinement in a prison." *Morrissey v. Brewer*, 408 U.S. 471, 482, 92 S.Ct. 2593, 2601, 33 L.Ed.2d 484 (1971). In contrast to an incarcerated offender, a parolee enjoys a degree of liberty that enables him to "do a wide range of things open to persons who have never been convicted of any crime," including the freedom to "be gainfully employed and ... to be with family and friends and to form the other enduring attachments of normal life." *Id.*

■ Colorado statutory law provides that the parolee who so "conducts himself as not to incur his reincarceration … shall be deemed to be still serving out the sentence imposed" and must be credited with the time served on parole toward the sentence. § 17–22.5–203(2), 8A C.R.S. (1986). By virtue of the same statutory scheme, however, the parolee who is revoked for failure to comply with the conditions of his parole may be returned to the custody of the Department of Corrections to serve out the sentence originally imposed, and "the time between his release and his return to said custody shall not be considered any part of the term of his sentence." § 17–22.5–203(1), 8A C.R.S. (1986); *see Ferchaw v. Tinsley*, 234 F.Supp. 922, 924 (D.Colo. 1964). Because an offender serving out a community correctional sentence on nonresidential status is free to function in the community in a manner unencumbered by most of the constraints associated with confinement, we believe that a community correctional offender's entitlement to credit for time served on nonresidential status should be resolved in the same manner as a parolee's claim for credit for the time served on parole. Thus, if the nonresident community correctional offender complies with the rules and terms of the nonresidential supervision during the entire period of nonresidential supervision, the offender should be credited with that period of time in satisfaction of the community correctional sentence. If, however, the nonresident community correctional offender violates the conditions of the community correctional placement, then the time between the offender's release *from residential status* and the termination of the offender's nonresidential status should not be considered as any part of the term of the community correctional placement for the purpose of presentence-confinement credit upon resentencing. To credit the community correctional offender with time served on nonresidential status would result in the anomaly of granting credit for presentence "confinement" for a period of time during which the offender was never actually "confined"

in any meaningful sense of that term. *See People v. Winters*, 789 P.2d 1120 (Colo. App.1990).

We accordingly hold that where, as here, a community correctional offender is sentenced to a community corrections facility for a definite term, is later placed on nonresidential status, and thereafter violates a rule or condition of the community correctional placement while on nonresidential status, such offender is not entitled upon resentencing to credit for that part of the community correctional sentence served as a nonresident.

The judgment of the court of appeals in each of these cases is accordingly reversed.

LOHR, J., dissents, and KIRSHBAUM, J., joins in the dissent.

KIRSHBAUM, J., dissents, and LOHR, J., joins in the dissent.

Justice LOHR dissenting:

The majority holds that an offender who is originally sentenced to community corrections for a definite term and later is resentenced under section 17–27–114, 8A C.R.S. (1986 & 1991 Supp.), for violating a rule or condition of the community correctional placement is not entitled to credit on resentencing for time spent as a nonresident of the community correctional facility while serving the original sentence. Because I believe this holding is contrary to the express terms of the controlling statute, I respectfully dissent.

The statute governing the resentencing of an offender who has been sentenced to a community correctional facility or program, and is removed from the facility or program for violating a rule or condition of placement is section 17–27–114(2), 8A C.R.S. (1986),[1] which provides in pertinent part:

If the sentencing court determines that the offender shall not remain in community corrections, *the court is authorized* to make appropriate orders for the transfer of such offender from the county jail

---

1. § 17–27–114(2) was amended in 1989 by the addition of a sentence not relevant to the issue before us. *See* § 17–27–114(2), 8A C.R.S. (1991 Supp.), setting forth the section as amended.

to a correctional facility and *to resentence such offender and impose any sentence which might originally have been imposed without increasing the length of the original sentence.*

(Emphasis added.) [2]

An offender is serving his sentence for a definite term during time spent as a non-resident of a community correctional facility as well as during time spent as a resident of such a facility. On resentencing, section 17–27–114(2) authorizes a court to impose any sentence that might originally have been imposed, but with the critical limitation that the length of the original sentence must not be increased. Adherence to this limitation of authority necessitates allowing credit for *all* time served in community corrections placement, including time spent on nonresidential status. As the Colorado Court of Appeals correctly noted in *People v. Hoecher,* 804 P.2d 230, 231 (Colo.App.1990), to disallow credit for time spent on nonresidential status would be tantamount to increasing an offender's sentence.

The majority relies on the statutes and caselaw concerning the revocation of parole and presentence confinement credit when a violation of a term or condition of parole has occurred. Maj. op. at 12–13. This reliance is misplaced because, as noted above, resentencing upon termination of a community corrections placement is controlled by a clearly worded and specifically applicable statute mandating a result contrary to that reached by the majority. Resentencing on revocation of parole is controlled by a different statute explicitly disallowing credit for time between an offender's release and return to custody in imposing resentence. § 17–22.5–203(1), 8A C.R.S. (1986). Similarly, the statute regarding credit for presentence confinement specifically requires that the offender be *confined* prior to the imposition of sentence in order to be entitled to credit.

§ 16–11–306, 8A C.R.S. (1991 Supp.). Section 17–27–114(2) contains no such requirement.

The majority also makes a compelling case that resentencing after termination of a community corrections placement logically *should* be governed by the same rules concerning credit for time served while not incarcerated as apply when parole is revoked. Maj. op. at 12–13. The short answer to this argument, however, is that the legislature has not seen fit to follow this logic.

In each of the three consolidated cases now before us the Colorado Court of Appeals held that time spent in nonresidential status during a community corrections placement must be credited upon resentencing in order to comply with the statutory mandate that upon resentencing, an original sentence cannot be increased. I agree and would affirm the judgments of the court of appeals.

KIRSHBAUM, J., joins in this dissent.

Justice KIRSHBAUM dissenting.

I agree with the observations of Justice Lohr that the provisions of section 17–27–114, 8A C.R.S. (1986 & 1991 Supp.), require a trial court to grant credit for time spent as a nonresident of a community correctional facility when resentencing such defendant because of an unsuccessful placement. As the majority recognizes, trial court authority to place offenders in community corrections programs is controlled by statute. Trial courts are authorized to "sentence" a nonviolent felony offender to either a residential or nonresidential facility or program. § 17–27–105(1)(a), 8A C.R.S. (1986). Section 17–27–114 authorizes a sentencing court determining that an offender shall not "remain" in community corrections to resentence the offender, providing that the length of the subsequent "sentence" does not exceed the length of

2. *See also* § 17–27–103(3), 8A C.R.S. (1986 & 1991 Supp.), giving the corrections board the "authority to accept, reject, or reject after acceptance the placement of any offender in its community correctional facility or program" and providing for resentencing on rejection after initial acceptance. The resentencing court is authorized to "impose any sentence which might originally have been imposed without increasing the length of the original sentence." This wording is identical to that in § 17–27–114(2).

the original sentence. As a trial court has no control over the amount of time a defendant resides within or without a community correctional placement facility during the length of the initial sentence, it appears directly contrary to the purpose as well as the language of the statutes authorizing sentencing and resentencing to community corrections programs to create an artificial distinction between residential and nonresidential placements. However compelling the arguments based on differing statutory purposes and provisions regarding probation and parole might be, in my view the General Assembly has clearly provided a different scheme for different purposes with regard to offenders sentenced to programs administered by independent community corrections boards.

For the foregoing reasons, I respectfully dissent.

LOHR, J., joins in this dissent.