Karl BEECROFT, Petitioner,

v.

The PEOPLE of the State of
Colorado, Respondent.

No. 93SC357.

Supreme Court of Colorado,
En Banc.

May 16, 1994.

Rehearing Denied June 6, 1994.

Cherner and Blackman, Barbara S. Blackman, Denver, for petitioner.

Gale A. Norton, Atty. Gen., Stephen K. ErkenBrack, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., John Daniel Dailey, Deputy Atty. Gen., Robert Mark Russel, First Asst. Atty. Gen., Wendy J. Ritz, Asst. Atty. Gen., Denver, for respondent.

Justice ERICKSON delivered the Opinion of the Court.

■ We granted certiorari to review *People v. Beecroft*, 862 P.2d 973 (Colo.App.1993), which held that a suspended sentence conditioned on drug treatment in a Cenikor facility does not constitute "confinement" for purposes of section 16–11–306, 8A C.R.S. (1986).[1] As a result of this holding, the court of appeals concluded that the defendant, Karl Beecroft, is not entitled to confinement credit for the time he spent at Cenikor.[2] We agree with the court of appeals and accordingly affirm.

## I

On September 9, 1990, Beecroft was charged with one count of theft from the elderly,[3] and one count of conspiracy to commit theft from the elderly.[4] The prosecution later added three habitual criminal charges to the information.[5] Beecroft pleaded guilty to one count of theft from the elderly and the remaining charges against him were dismissed. The trial court sentenced Beecroft to the Department of Corrections (DOC) for a period of six years and a period of parole.[6] At the sentencing hearing, Beecroft informed the court that he was addicted to cocaine and requested he be admitted to the Cenikor drug treatment program. The trial court suspended his sentence for two years on the

---

1. Cenikor is a non-profit drug rehabilitation center which provides long-term treatment in structured residential treatment communities. As part of the program, participants perform jobs for Cenikor or for certain outside businesses. Participants working for outside businesses earn an hourly wage for their services. All earned wages are paid to Cenikor. In exchange for the wages, or services performed at Cenikor, Cenikor participants receive room and board, treatment, clothing, and other personal necessities. *See Colorado Dep't of Social Servs. v. Davis*, 796 P.2d 494, 495 (Colo.App.1990).

 Cenikor has not contracted with the state to be a community corrections facility. Although Cenikor has not been designated a community corrections facility, § 17–27.1–101, 8A C.R.S. (1986 & 1993 Supp.), provides that a nongovernmental facility that has not contracted with the state to be a community corrections facility is nevertheless authorized to provide residential treatment for offenders.

2. It is well established that there is no constitutional right to presentence-confinement credit. *See, e.g., People v. Johnson*, 797 P.2d 1296, 1298 (Colo.1990); *People v. LeClair*, 667 P.2d 764, 765 (Colo.1983); *People v. Turman*, 659 P.2d 1368, 1373 (Colo.1983); *People v. Scott*, 626 P.2d 1130, 1131–32 (Colo.1981).

3. § 18–4–401, 8B C.R.S. (1986).

4. § 18–2–201, 8B C.R.S. (1986).

5. § 16–13–101, 8A C.R.S. (1986).

6. As a result of his confinement in county jail while awaiting trial and sentencing, the district court credited Beecroft for 104 days of presentence confinement and 104 days for good time.

condition that he successfully complete drug treatment at Cenikor.[7] The Probation Department supervised Beecroft's treatment.

On April 5, 1991, the Probation Department filed a complaint to vacate Beecroft's suspended sentence. The complaint alleged that Beecroft had violated the terms of his suspended sentence by failing to obtain counseling and treatment for his drug addiction and by leaving the Cenikor facility without permission. The district court held a hearing on the possible revocation of Beecroft's probationary status on April 15, 1991. At the hearing, a Cenikor representative stated that Cenikor would allow Beecroft to return to the program if he agreed to receive treatment at the Cenikor facility in Houston, Texas. Beecroft agreed to relocate to the Houston facility and the Probation Department withdrew the complaint. The trial court issued an amended mittimus sentencing Beecroft to the DOC for a period of six years, suspended sentence, and conditioned the sentence on two years of treatment at Cenikor. The new mittimus was entered nunc pro tunc October 22, 1990, the day of the original mittimus.

Beecroft entered the Houston facility on April 16, 1991. On June 6, 1991, he called the Denver Probation Department and explained he was unable to comply with the program and was leaving. Beecroft's probation officer told him he had one week to return to Denver. Upon arriving in Denver, Beecroft was admitted into the Denver Cenikor facility.

On June 21, 1991, the Denver Probation Department filed a second complaint to vacate Beecroft's suspended sentence. The complaint alleged that Beecroft continued to have frequent and serious compliance problems. At a hearing on October 15, 1991,

Beecroft admitted violating the terms of his suspended sentence. Beecroft's attorney requested that his client receive credit for the time he spent in the Cenikor program:

> Beecroft did do seven months in Cenikor. Now, I have explained to him—he wants me to ask you for credit for time served for that Cenikor time. I have explained to him that that was something that he did while he was on probation. Even if it was a condition of probation, it was not exactly like Community Corrections time in that [he received] credit for Community Corrections time and that is treated as custody or confinement. But this was a condition of probation, so that he is not—I think it was in the discretion of the Court to grant him that time or not.

The trial court denied Beecroft's request for credit for the time he spent at Cenikor stating:

> Very frankly, looking at this whole pattern, Mr. Beecroft, it is apparent to me you're just a con man and a scamster. You're overdue at Canon City. You have lied, cheated, and stolen your way through life and conned people and scammed people. And I knew I was getting conned when I put you on probation, but I thought since you had convinced these cops that you had earned the right for another chance, even though you had two prior felony convictions, I relented and gave you this chance, and you promptly blew it.

The court resentenced Beecroft to the DOC for a term of six years and a period of parole.

Beecroft, through counsel, filed a motion to reconsider sentence. Subsequently, he also filed a pro se "motion for time spent in community corrections." The trial court de-

---

7. At the sentencing hearing, defense counsel and an agent for the Drug Enforcement Agency stated that Beecroft had served as an informant and would probably be killed if he were sent to prison. After suspending his sentence, the court advised to Beecroft of the ramifications of failing to complete the program:

> But I'll tell you one thing. Informant or no informant, danger or no danger, you come back into this courtroom, you don't do what I

tell you to do, you got six years to pull. And I don't care who's down at the Department of Corrections or how many threats they make on you. You just go down there and take your chances.

Because of Beecroft's prior felony history, the court could not impose a sentence of probation. *See* § 16–11–201(2), 8A C.R.S. (1986) (providing that any person having sustained two or more

nied both motions. Beecroft appealed[8] and the court of appeals affirmed the trial court's decision and concluded that the time Beecroft spent in the Cenikor program was the equivalent of probation. Because an offender is not entitled to presentence-confinement credit for time spent on probation, the court of appeals held that Beecroft was not entitled to confinement credit for the time spent in drug rehabilitation.[9]

## II

Beecroft claims that he is entitled to receive presentence-confinement credit, pursuant to section 16–11–306, 8A C.R.S. (1986), for the time he served in the Cenikor program.[10]

Section 16–11–306 provides:

> A person who is confined for an offense prior to the imposition of sentence for said

prior felony convictions is ineligible for probation).

**8.** In Beecroft's notice of appeal, he requested that the court appoint an attorney to represent him and the court appointed an attorney from the public defender's office. On May 29, 1992, the public defender moved to withdraw explaining that "the case law is abundantly clear that Mr. Beecroft is not entitled to credit for time served at Cenikor." The court allowed the public defender to withdraw and appointed private counsel to represent him on this appeal.

**9.** The court of appeals noted that treatment at Cenikor is therapeutic not penal in nature. Although this fact is not determinative of whether a defendant is entitled to presentence-confinement credit, the nature of the Cenikor program supports the conclusion that Beecroft was not confined.

**10.** In affirming the denial of presentence-confinement credit, the court of appeals initially questioned whether Beecroft's time in Cenikor constituted "presentence confinement" pursuant to section 16–11–306. The court of appeals stated: "Here, the time that defendant spent in the Cenikor program did not precede the 'imposition' of sentence; it followed such imposition." *People v. Beecroft*, 862 P.2d 973, 974 (Colo.App. 1993).

The fact that a sentence has been imposed does not determine whether § 16–11–306 is or is not applicable. This section has consistently been applied to defendants resentenced to correctional facilities following revocation of a prior sentence. *See People v. Kastning*, 738 P.2d 807, 808 (Colo. App.1987) (holding that confinement credit is due for the time an offender spends in communi-

offense is entitled to credit against the term of his sentence for the entire period of such confinement. At the time of sentencing, the court shall make a finding of the amount of presentence confinement to which the offender is entitled and shall include such finding in the mittimus. Such period of confinement shall be deducted from the sentence by the department of corrections.

§ 16–11–306, 8A C.R.S. (1986 & 1993 Supp.).[11]

 In order to receive presentence-confinement credit, an offender must have been actually confined and there must have been a substantial nexus between the confinement and the charge for which the sentence is ultimately imposed. *People v. Hoecher*, 822 P.2d 8, 12 (Colo.1991); *see also*

ty corrections after sentence is imposed); *People v. Washington*, 709 P.2d 100, 102 (Colo.App. 1985) (awarding credit for time served in community corrections after sentence was imposed); *see also People v. Patrick*, 683 P.2d 801 (Colo. App.1983) (applying § 16–11–306 and holding that defendant who was resentenced after violating the terms and conditions of his confinement in community corrections was entitled to credit for time served while confined pursuant to the initial sentence); *People v. Radar*, 652 P.2d 1085 (Colo.App.1982) (applying § 16–11–306 and holding that a defendant who was resentenced after violating the conditions of his probation was not "confined" and therefore was not entitled to credit for the time spent on probation); *cf. Santisteven v. Johnson*, 751 P.2d 621 (Colo. 1988) ("By its terms, the statute applies to persons who, having been charged with and ultimately convicted of criminal conduct, remain in confinement prior to the ultimate disposition of those charges."); *People v. Jones*, 176 Colo. 61, 489 P.2d 596 (1971) (recognizing that credit should be given to a defendant for all time spent in custody as a result of the criminal charge including time spent pending the resolution of an appeal or prior to arrival at the institution to which the defendant has been committed); *but cf. Schubert v. People*, 698 P.2d 788, 794 (Colo. 1985) (explaining that the purpose of § 16–11–306 is to eliminate the unequal treatment suffered by indigent defendants who, because of their inability to post bail, are confined longer than their wealthier counterparts).

**11.** In 1988 the General Assembly amended § 16–11–306 by adding additional language to the statute. Ch. 110, sec. 2, § 16–11–306, 1988 Colo.Sess. Laws 663, 663–64. This amendment is not relevant in this case.

*Schubert v. People,* 698 P.2d 788, 795 (Colo. 1985). The parties do not dispute that Beecroft's treatment at Cenikor was substantially connected to the charge for which he was ultimately sentenced. Therefore, the sole question presented for review is whether the time spent in drug treatment constitutes "confinement" within the meaning of section 16–11–306.[12]

### A

■ Time spent in jail or a DOC facility constitutes "confinement" under section 16–11–306. *E.g., Santisteven v. Johnson,* 751 P.2d 621, 625 (Colo.1988); *Castro v. District Court,* 656 P.2d 1283, 1284 (Colo.1982); *see also People v. Freeman,* 735 P.2d 879, 881 (Colo.1987) (noting confinement in a jail facility becomes part of the time served on the convicted person's sentence); *People v. Chavez,* 659 P.2d 1381, 1383–84 (Colo.1983) (recognizing that time served in jail constitutes confinement).

■ An offender is entitled to credit for time spent in jail or a DOC facility even if the time is a condition of probation. *See People v. Murray,* 805 P.2d 1175, 1176 (Colo. App.1990) (recognizing presentence-confinement credit for time spent in county jail as a condition of probation); *see also Massey v. People,* 736 P.2d 19, 21 (Colo.1987) (holding that if an offender is sentenced to a term of probation that is subsequently revoked, periods of incarceration must be credited against the offender's sentence). Similarly, the fact that a probationer served time in a county or municipal jail in conjunction with a work release program under section 16–11–212(1), 8A C.R.S. (1986), does not alter the result that the probationer is entitled to confinement credit for the time spent in jail or a DOC facility. *People v. Lee,* 678 P.2d 1030, 1031 (Colo.App.1983).

In each of these cases, the common factor is that the offender was sentenced to spend time in jail or a DOC facility. Because these facilities substantially limit an individual's liberty, the offenders were entitled to credit for the time they were so confined.

■ On the opposite end of the spectrum from time spent in jail or a DOC facility is time spent on probation that is not conditioned on residency in a penal institution. A sentence of probation is not a form of imprisonment. *See People v. Flenniken,* 749 P.2d 395, 399 (Colo.1988); *People v. McDaniels,* 844 P.2d 1257, 1258–59 (Colo.App.1992). Therefore, if probation is revoked, the time served on probation need not be credited against the new sentence. *See Gehl v. People,* 161 Colo. 535, 538, 423 P.2d 332, 334 (1967); *see also People v. Radar,* 652 P.2d 1085, 1086–87 (Colo.App.1982) (holding that an offender is not entitled to presentence-confinement credit for time served in community corrections as a condition of probation if he is later rejected by community corrections and his probation is revoked).

■ A direct sentence to community corrections is an intermediate penalty, more severe than probation, but less harsh than incarceration in jail or in a DOC facility. *See Wilson v. People,* 747 P.2d 638, 639–40 (Colo. 1987); *People ex rel. Van Meveren v. District Court,* 195 Colo. 34, 36, 575 P.2d 4, 6 (1978). When an offender is sentenced to community corrections as a resident, the sentence is a term of imprisonment, but one served in a local facility rather than in a DOC facility. *See People v. Galvin,* 835 P.2d 603, 605 (Colo. App.1992); *People v. Saucedo,* 796 P.2d 11, 12 (Colo.App.1990). Accordingly, if an offender spends time in a community correctional facility as a resident, the offender's

**12.** When a defendant is sentenced to the DOC, the court does not have discretion to grant or deny confinement credit; the sentencing court must simply note if the defendant is entitled to confinement credit and if he is, note the amount of the credit. *Massey v. People,* 736 P.2d 19, 21 (Colo.1987); *Patrick,* 683 P.2d at 803 (Colo.App. 1983); *Radar,* 652 P.2d at 1086 (Colo.App.1982); *People v. Dempsey,* 624 P.2d 374, 375 (Colo.App. 1981). In contrast, if a defendant is sentenced to a facility that is not run by the DOC, such as a county jail, the sentencing court has discretion to award confinement credit. *Castro v. District Court,* 656 P.2d 1283, 1284 (Colo.1982) ("[T]he language requiring the Department of Corrections to deduct the presentence confinement from the sentence implies that credit for presentence confinement is mandated only when the sentence is to be served in a state correctional facility."); *see also People v. Johnson,* 797 P.2d 1296, 1299 (Colo.1988); *People v. Lachicotte,* 713 P.2d 408, 410 (Colo.App.1985).

liberty is sufficiently diminished and justifies crediting the offender for the time spent in community corrections. *People v. Kastning*, 738 P.2d 807, 808 (Colo.App.1987) (holding that if an offender is resentenced to the DOC after initially being sentenced to community corrections, the offender is entitled to presentence confinement credit for the time served on direct sentence to community corrections); *People v. Washington*, 709 P.2d 100, 102 (Colo.App.1985) (holding that an offender is entitled to credit for time served in community corrections if he is later resentenced).[13]

In *People v. Hoecher*, 822 P.2d 8 (Colo. 1991), we distinguished non-residential status at a community correctional facility from residential status at a community correctional facility and held that a non-resident offender was not entitled to presentence-confinement credit for the time spent as a non-resident. Our holding was premised on the fact that:

> in contrast to an incarcerated offender, [an offender serving a community correctional sentence as a non-resident] enjoys a degree of liberty that enables him to "do a wide range of things open to persons who have never been convicted of any crime, including the freedom to be gainfully employed and ... to be with family and friends and to form the other enduring attachments of normal life."

*Id.* at 12 (quoting *Morrisey v. Brewer*, 408 U.S. 471, 482, 92 S.Ct. 2593, 2600 (1971)). We also said that:

> Because an offender serving out a community correctional sentence on non-residential status is free to function in the community in a manner unencumbered by most of the constraints associated with confinement, we believe that a community correctional offender's entitlement to credit for time served on nonresidential status should be resolved in the same manner as a parolee's claim for credit for the time served on parole. Thus, if the nonresident community correctional offender complies with the rules and terms of the nonresi-

dential supervision during the entire period of nonresidential supervision, the offender should be credited with that period of time in satisfaction of the community correctional sentence. If, however, the nonresident community correctional offender violates the conditions of the community correctional placement, then the time between the offender's release from residential status and the termination of the offenders's nonresidential status should not be considered as any part of the term of the community correctional placement for the purpose of presentence-confinement credit upon resentencing.

*Id.*

In *People v. Radar*, 652 P.2d 1085 (Colo. App.1982), the defendant was sentenced to probation and, as a condition of probation, was required to enter a community corrections halfway house. Subsequently, the trial court revoked probation and sentenced the defendant to the custody of the DOC. The defendant appealed, asserting that the trial court was required by section 16–11–204(2)(c), 8 C.R.S. (1973 & 1981 Supp.), to credit him with the time served in the community correctional facility. The court of appeals in reviewing the defendant's claim said:

> In *People ex rel. Van Meveren v. District Court*, 195 Colo. 34, 575 P.2d 4 (1978), our Supreme Court noted that community corrections programs provide the trial court "with a sentencing medium that is more severe than probation, but not as harsh as incarceration." Undoubtedly, a defendant's activities in a halfway house are more restricted than when on probation. A halfway house resident, however, unlike one who is confined in prison, does have the freedom to leave and go to work and do other things in the community subject to the limitations imposed by the rules of the halfway house.

---

**13.** Unauthorized absence from a community correctional facility constitutes escape under § 18–8–208, 8B C.R.S. (1986) and § 17–27–108, 8A C.R.S. (1986). *See People v. Saucedo*, 796 P.2d 11, 12 (Colo.App.1990) ("We also note that a direct sentence to community corrections is like incarceration in custody of the Department of Corrections in that an unauthorized absence from a community corrections facility constitutes escape.").

*Radar,* 652 P.2d at 1086–87. The court concluded that the defendant was not entitled to confinement credit.

A suspended sentence subject to the condition that the offender receive drug treatment is analogous to probation, or non-residential status at a community correctional facility; a suspended sentence is not analogous to confinement in a jail, DOC facility, or community corrections. Like the sentences at issue in *Hoecher* and *Radar,* Beecroft's sentence is best viewed as a sanction that is imposed where total custody or confinement is unnecessary or not in the best interest of society.[14]

### B

The legislative history of the interrelationship between probation and a suspended sentence, and the ABA Standards for Criminal Justice that describe this interrelationship, support the conclusion that a suspended sentence accompanied by conditions is an intermediate sanction substantially similar to probation but available in contexts where probation is not.

Prior to 1972, the authority to suspend imposition or execution of a sentence was set forth in section 39–16–6, C.R.S. (1963). *See People v. District Court,* 673 P.2d 991 (Colo. 1983). The authority to suspend a term of imprisonment was necessary because probation was not expressly within the statutory sentencing alternatives. Therefore, to grant probation, a sentencing court had to suspend imposition or execution of the statutorily mandated sentence. *See Flenniken,* 749 P.2d at 397; *People v. District Court,* 673 P.2d at 996 n. 6; *see also Coffey v. County Court,* 177 Colo. 81, 492 P.2d 839 (1972).

In 1971 and 1972, the criminal code was rewritten and the General Assembly included probation within the statutory sentencing alternatives. As a result of the statutory power to grant probation, the General Assembly removed the sentencing court's power to suspend sentences in connection with grants of probation. *See Flenniken,* 749 P.2d at 397–98; *People v. District Court,* 673 P.2d at 995–96.

In 1988, the legislature restored a sentencing court's power to suspend sentences. *See* ch. 116, sec. 5, § 18–1–105, 1988 Colo.Sess. Laws 679, 682. Section 18–1–105(10), C.R.S. (1988 Supp.), provides:

> When it shall appear to the satisfaction of the court that the ends of justice and the best interest of the public, as well as the defendant, will be best served thereby, the court shall have the power to suspend the imposition or execution of sentence for such period and upon such terms and conditions as it may deem best.

In 1991, the legislature further clarified the situations under which a sentencing court will have the authority to suspend a sentence, adding the following language to section 18–1–105(10):

> In no instance shall any such sentence be suspended if the defendant is ineligible for probation pursuant to section 16–11–201, C.R.S., except upon an express waiver being made by the sentencing court regarding a particular defendant upon recommendation of the district attorney and approval of such recommendation by an order of the sentencing court pursuant to section 16–11–201(4), C.R.S.

Ch. 73, sec. 6, § 18–1–105, 1991 Colo.Sess. Laws, 402, 404–05.

The General Assembly's reenactment of the power to suspend an offender's sentence, as well as the specific reference to the requi-

---

**14.** Other jurisdictions have also declined to award credit for time spent in a drug rehabilitation center or similar facility as a condition of probation. *See State v. Reynolds,* 170 Ariz. 233, 823 P.2d 681, 683–84 (1992) (statute requiring credit against sentence for time prior to sentence spent "in custody" does not permit credit for time spent in rehabilitation center, even though conditions of rehabilitation center may be equal to or more severe that incarceration); *Maus v. State,* 311 Md. 85, 532 A.2d 1066, 1074 (1987) (trial court not required to give defendant credit for time spent in private residential drug treatment program as condition of probation); *Grant v. State,* 99 Nev. 149, 659 P.2d 878, 879 (1983) (defendant who had spent time at residential drug treatment facility was not "in confinement" within the meaning of Nevada statute because he was free to leave the facility at any time); *State v. Nagel,* 23 Ohio St.3d 185, 492 N.E.2d 158, 159–60 (1986) (court not required to credit time defendant spent in rehabilitation facility as condition of probation).

site conditions to suspend sentence when an offender is ineligible for probation, indicates that the General Assembly has created a mechanism for courts to impose an intermediate sanction in specific situations including situations where an offender is not eligible for probation.

The ABA Standards for Criminal Justice also support the conclusion that a suspended sentence is an intermediate sanction, not confinement:

> Standard 18–2.4. Intermediate sanctions
>
> (a) Attention should be directed to the development of a range of sentencing alternatives which provide an intermediate sanction between supervised probation on the one hand and commitment to a total custody institution on the other. Examples of the types of dispositions which might be authorized are:
>
> (i) commitment on an intermittent basis to a local facility which permits the offender to hold a regular job or to receive education or vocational training while subject to supervision or confinement on nights and weekends;
>
> (ii) commitment to an institution for a short, fixed term, followed by an automatic release under supervision;
>
> (iii) a required term of community service, such as in a hospital or other public or charitable facility, or a sentence involving the performance of restitutory services.

3 ABA Standards for Criminal Justice, Sentencing Alternatives and Procedures, Standard 18–2.4 (2d ed. 1980 & 1986 Supp.). The commentary on this standard states: "Probation and lesser dispositions are clearly not the appropriate sentencing alternatives in every case where substantial confinement is believed unnecessary. In a number of instances, particularly involving the repeat offender...." *Id.* Commentary at 100–01.

In this case the sentencing judge crafted an intermediate sentence in an attempt to assist Beecroft with his addiction to drugs and to keep him away from the dangers he would face in prison as a result of his work for the police. Because Beecroft was being sentenced for his third felony, the court could not sentence him to probation subject to conditions. Instead of sentencing Beecroft to confinement, the judge crafted an intermediate sanction pursuant to section 18–5–105(10), which is not "confinement" under section 16–11–306.

### C

Like non-resident status in a community correctional facility, or residency in a halfway house as a condition of probation, treatment in Cenikor allows an individual to retain substantial liberty and the record supports the conclusion that Beecroft was not confined. Beecroft's suspended sentence and treatment by Cenikor was monitored by the Probation Department.[15] The probation officer who monitored Beecroft's sentence filed a report with the court that described Beecroft's actions while supervised by Cenikor. The report states that when the Denver Cenikor facility terminated Beecroft's treatment for noncompliance, Beecroft "left the facility." Subsequently, Beecroft was returned to court and requested to be transferred to the Houston Cenikor facility. The probation officer reported:

> On or about June 6, 1991, the defendant called the Probation Department stating that he was unable to comply with the Cenikor Program in Houston and was leaving. He was given one week to get back to Denver and report to Probation.

Beecroft's ability to leave the Denver facility, as well as his ability to leave the Houston facility and travel unaccompanied from state to state, indicates he was not confined.[16]

---

15. In *People v. Wells*, 691 P.2d 361, 364 (Colo. App.1984), the court of appeals noted that the Probation Department is not a prison or correctional institution. The court concluded that under § 18–1–105(9)(a)(V), C.R.S. (1986), which sets forth circumstances for sentencing beyond the presumptive range, the Cenikor program does not constitute being "under confinement." *Id.*

16. The substantial freedom exercised by Beecroft is indicative of probation, not confinement in the penal system. In addition to scheduling his own transfer and being granted substantial latitude in travelling from state to state, the probation officer's report noted that Beecroft "was instructed to get a job as soon as possible and to make no excuse about not being able to pay for treatment as had happened in the past."

III

■ When a court suspends an offender's sentence and conditions the suspension on treatment at a Cenikor facility, the court is employing an intermediate sanction which is analogous to the sanction of non-resident status in a community correctional facility, or probation subject to residency in a community corrections halfway house. The court of appeals correctly held that a suspended sentence subject to the condition that an offender receive treatment for drug abuse from Cenikor does not constitute "confinement" under section 16–11–306, 8A C.R.S. (1986). Accordingly, we affirm the judgment of the court of appeals that Beecroft is not entitled to presentence-confinement credit for the time he spent at Cenikor.

Upon arriving in Denver from Houston, Beecroft notified his probation officer and told him that he had contacted an Addiction Research and Treatment (ARTS) facility and was involved in their program. It was later learned that Beecroft did contact the ARTS program but told an administrator that he could not afford their fees. Beecroft also told the probation officer that he was working at the International House of Pancakes. Subsequently, Beecroft again called the Probation Department and informed a probation officer that he had terminated his employment with the International House of Pancakes and was employed by Easy Start as a marketing representative. He explained that he was working twelve hours a day, six days a week, soliciting business for Easy Start by phone and that his work accounted for fifteen percent of the programs profits. The Probation Department called Easy Start that same day to verify Beecroft's story. The phone call revealed that Beecroft had only worked one day for Easy Start because Easy Start was not satisfied with his work.

The probation officer's report indicates that Beecroft was only supervised by telephone; scheduled his own transfer from the Houston Cenikor facility; scheduled, and was expected to pay for, his own treatment; had the freedom to pursue employment of his choice, and transferred jobs without seeking permission. These facts support the court of appeal's analysis that Beecroft's sentence is analogous to probation.