The **PEOPLE of the State of Colorado,**
**Plaintiff–Appellee,**

v.

**James R. GALVIN, Jr., Defendant–**
**Appellant.**

**Nos. 90CA0321, 91CA1280.**

Colorado Court of Appeals,
Div. A.

July 2, 1992.

Rehearing Denied July 30, 1992.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Robert M. Petrusak and Roger G. Billotte, Asst. Attys. Gen., Denver, for plaintiff-appellee.

David F. Vela, State Public Defender, Nancy J. Lichtenstein, Deputy State Public Defender, Denver, for defendant-appellant.

Opinion by Chief Judge STERNBERG.

Defendant, James R. Galvin, Jr., appeals the trial court's order denying his Crim.P. 35(c) motion for post-sentence confinement credit and for good-time credit. We reverse the order.

In case 87CR618, defendant pled guilty to criminal attempt second degree burglary and, on March 9, 1988, was sentenced to two years probation.

In case 88CR1012, defendant pled guilty to criminal attempt second degree burglary and, on January 27, 1989, was sentenced to community corrections for four years.

On February 1, 1989, defendant's probation in 87CR618 was revoked, and he was sentenced to community corrections for one year, to run consecutive to the sentence imposed in 88CR1012.

On June 15, 1989, defendant's initial sentence to community corrections was revoked, and he was again resentenced to community corrections for four years in 88CR1012 and for one year in 87CR618. These sentences were ordered to run consecutively. No credit for time served or for good time was awarded to the defendant.

On May 15, 1991, defendant's community corrections sentence was again revoked, and he was resentenced to a four-year term in the Department of Corrections. Defendant was awarded credit for the time served from June 15, 1989, to May 15, 1991.

Thereafter, the defendant filed the Crim.P. 35(c) motion here at issue requesting credit for the time served from January 27, 1989, to June 15, 1989, and also good-time credit for the entire period of his confinement in residential community corrections. Relying on § 16–11–306, C.R.S. (1991 Cum.Supp.) and *Castro v. District Court*, 656 P.2d 1283 (Colo.1982), the trial court found that the community corrections facility here is operated by a private organization and is governed by a board appointed by the county commissioners. Therefore, the trial court held that defendant was not entitled to credit for the time served from January 27, 1989, to June 15, 1989, because he was not sentenced to a state correctional facility under the supervision of the Department of Corrections, as required by 16–11–306, C.R.S. (1991 Cum. Supp.). Consequently, it also concluded that defendant was not entitled to good-time credit for the same period.

In addition, the court noted that the community corrections board had eliminated the awarding of good-time credit for those persons sentenced after May 18, 1989, and it determined that such action was within its broad authority. Hence, relying on § 17–22.5–201, C.R.S. (1986 Repl.Vol. 8A) and the board's authority, the trial court found that defendant was not entitled to good-time credit for the entire time served in residential community corrections because he was not confined in a correctional facility of the Department of Corrections.

The trial court reasoned that the granting of presentence confinement credit and good-time credit required additional record keeping and additional personnel which would divert funds. Additionally, granting the credit could result in a defendant being under the jurisdiction of the program for too short a time for him to receive its benefits.

I.

■ Defendant contends that he is entitled to both confinement credit and good-time credit for the period between January

27, 1989, and June 15, 1989. He maintains that failure to award him credit impermissibly increased the length of his original sentence in violation of § 17–27–114(2), C.R.S. (1991 Cum.Supp.). We agree.

A defendant sentenced directly to a community corrections facility may be resentenced to the Department of Corrections if initial acceptance in the facility is revoked. *People v. Saucedo*, 796 P.2d 11 (Colo.App. 1990).

If a defendant is rejected after initial acceptance by a community corrections facility, then, under §§ 17–27–103(3) and 17–27–114(2), C.R.S. (1991 Cum.Supp.), the sentencing court is authorized to resentence the defendant and impose any sentence which might originally have been imposed "without increasing the length of the sentence." *People v. Kastning*, 738 P.2d 807 (Colo.App.1987).

Upon resentencing to the Department of Corrections, a defendant must receive credit for time served on direct sentence to community corrections. *People v. Washington*, 709 P.2d 100 (Colo.App.1985). A court's failure to grant such credit would be tantamount to increasing the length of the original sentence in violation of § 17–27–114(2). *People v. Hoecher*, 822 P.2d 8 (Colo.1991).

The community corrections statutes require that time served on direct sentence to community corrections is the equivalent of time served in the custody of the Department of Corrections. A community corrections sentence is a term of imprisonment, but one served in a local facility rather than in a department facility. *People v. Saucedo, supra.*

While it is within the trial court's discretion to grant or deny presentence confinement credit when the sentence is not to be served in a state correctional facility, *Castro v. District Court, supra,* once the defendant is sentenced to a state correctional facility, all time served in residential community corrections must be credited to his sentence.

We do not agree with the trial court's not crediting the defendant with the time served on his initial sentence to community corrections. There is no question that there is a substantial nexus between the defendant's confinement and the criminal conviction for which the defendant was resentenced. *See Schubert v. People*, 698 P.2d 788 (Colo.1985). The intervening period when he was resentenced to community corrections before being sentenced to the department does not change the character of the time served on his initial sentence to community corrections.

■ The time served on a direct sentence to community corrections is the equivalent of time served in the custody of the Department of Corrections. *People v. Saucedo, supra.* Thus, here, not granting the credit had the impermissible effect of increasing the defendant's sentence by 139 days. *See* § 17–27–114(2), C.R.S. (1991 Cum.Supp.).

Additionally, since the community corrections board was awarding good-time credit to all inmates sentenced to the community corrections facility prior to May 18, 1989, defendant is entitled to good-time credit, if otherwise eligible, for the period from January 27, 1989, to June 15, 1989. *See also* § 17–22.5–301, C.R.S. (1986 Repl.Vol. 8A).

## II.

■ In support of the trial court's order, the People assert that defendant's good time credit could not be considered because of the community corrections board's policy to eliminate good time credit for persons sentenced after May 18, 1990.

Defendant responds that the board's policy to eliminate good-time credit for persons sentenced after May 18, 1989, violated the constitutional prohibition against *ex post facto* laws and his right to equal protection. Based on the language in § 17–22.5–301, C.R.S. (1986 Repl.Vol. 8A), which authorizes good-time credit, we conclude that the defendant is entitled to good-time credit for the entire period of his confinement in residential community corrections. Thus, the board's policy to the contrary is of no effect.

Initially, we note that the statutory title which governs community corrections facilities and programs, § 17–27–101, et seq., C.R.S. (1986 Repl.Vol. 8A), does not contain any provision for the awarding of good-time credit.

The community corrections board is given broad authority to "establish and enforce standards for the operation of any community correctional facilities and community correctional programs and for the conduct of offenders." Section 17–27–103(3), C.R.S. (1991 Cum.Supp.). However, § 17–22.5–301, C.R.S. (1986 Repl.Vol. 8A) provides in pertinent part:

> (1) Each person sentenced for a crime committed on or after July 1, 1979, but before July 1, 1981, whose conduct indicates that he has substantially observed all of the rules and regulations of the institution or facility in which he has been confined and has faithfully performed the duties assigned to him shall be entitled to a good time deduction of fifteen days a month from his sentence. The good time authorized by this section shall vest quarterly and may not be withdrawn once it has vested. . . .

> . . . .

> (3) Each person sentenced for a crime committed on or after July 1, 1985, shall be subject to all the provisions of this part 3; except that the good time authorized by this section shall not vest and may be withheld or deducted by the department. . . .

A statute must be read and considered as a whole in order to ascertain the legislative intent in passing it. *People v. District Court*, 713 P.2d 918 (Colo.1986). To discern legislative intent, a court should look first to the statutory language. *People v. Warner*, 801 P.2d 1187 (Colo.1990). And, statutes must be construed to further the legislative intent evidenced by the entire statutory scheme. *Bynum v. Kautzky*, 784 P.2d 735 (Colo.1989).

■ There is a presumption that the word "shall," when used in a statute, is mandatory. *Williams Natural Gas Co. v. Mesa Operating Limited Partnership*, 778

P.2d 309 (Colo.App.1989). Hence, the General Assembly's use of the word "shall" mandates good time deduction to each person whose conduct indicates that he or she has observed the rules and regulations of the facility in which such person is confined.

Further, § 17–22.5–301(1) does not limit the place of confinement where good-time credit can be earned to the correctional facilities at Canon City or, indeed, to any facilities under the supervision of the Department of Corrections. Instead, it speaks of observance of "the rules and regulations of the *institution or facility in which [the prisoner] is confined."* *People v. Chavez*, 659 P.2d 1381 (Colo.1983) (emphasis in original). By this language the General Assembly appears to have made a decision to broaden the basis for computation of good-time credits by the enactment of § 17–22.5–301.

Moreover, familiar rules of statutory construction buttress the interpretation that we adopt here. We must presume that the General Assembly intended a just and reasonable result. Section 2–4–201(1)(c), C.R.S. (1980 Repl.Vol. 1B). But, a statutory scheme that would deny good-time credit on that part of a sentence served in a community corrections facility not operated by the department, while allowing good-time credit in a department facility, would be inequitable. Also, if a statute is capable of two possible meanings, the construction that will entitle the prisoner to release at the earlier time should be adopted. *People v. Chavez, supra.*

■ No contrary legislative intent is discernible from the fact that the General Assembly granted the department discretion to withhold or deduct good-time credits and did not establish the same procedure for other facilities outside the jurisdiction of the department. By virtue of the broad authority granted a community corrections board under the Community Corrections Facilities and Programs Act and the lack of any limiting language therein, we conclude that the board also has the discretion to withhold or deduct good-time credits.

Further, the fact that the good-time statute and the community corrections statute are within the same title suggests that the General Assembly intended that good time apply to all correctional facilities contained within that title. Had the General Assembly not intended this result, limiting language would have appeared in the Community Corrections Facilities and Programs Act.

We also conclude that the trial court's reliance on § 17–22.5–201, C.R.S. (1986 Repl.Vol. 8A) is misplaced. Section 17–22.5–201 applies only to crimes committed prior to July 1, 1979, and the language of the statute limits good-time credit to inmates "confined in a correctional facility of the department...." This language specifically limits good-time credit to inmates confined in a facility of the Department of Corrections and is in sharp contrast to the language in § 17–22.5–301.

In light of our decision, we need not address defendant's other contention.

The order is reversed, and the cause is remanded with directions to award defendant 139 days confinement credit for the period from January 27, 1989, to June 15, 1989, and for a determination of good-time credit.

NEY and RULAND, JJ., concur.