McKEE, Circuit Judge,
concurring.
I join in the analysis of my colleagues because I agree that the principles of statutory construction their analysis relies upon dictate the result in these cases. We therefore must hold that the “pronounced sentence ... determines the criminal history score” for purposes of determining whether a prior sentence is a “sentence of imprisonment” under U.S.S.G. § 4A1.1. However, I write separately to call attention to the fact that this result leads to unintended and unjust disparities in awarding criminal history points. These disparities arise because the manner of pronouncing sentences of imprisonment will often be governed by factors that have nothing to do with assessments that the guidelines attempt to incorporate into a defendant’s criminal history category. As I shall explain, serendipity can often play as significant a role in the way a sentence is pronounced as the prior judge’s assessment of the need to incarcerate.
*340 Given the wording of § 4A1.1 and the structure of the sentencing guidelines, I doubt that Congress or the Sentencing Commission actually considered whether confinement in “alternative housing” is tantamount to a “sentence of imprisonment” for purposes of calculating a criminal history category when the guidelines were initially drafted. As my colleagues note, U.S.S.G. §§ 4Al.l(a) and (b) both refer to a “sentence of imprisonment....” Yet, subsection (c) of that guideline refers only to “each prior sentence not counted in (a) or (b).... ” This certainly suggests that the “prior sentence” referenced in subsection (c) is to be distinguished from a “sentence of imprisonment.” The latter obviously refers to incarceration in a prison or jail-type facility. The guideline therefore appears to distinguish between such incarceration and other sentences. However, as my colleagues explain, the applicable principles of statutory construction require a different conclusion.
Had this precise question been considered when the guidelines were drafted, I believe subsection (c) would have been worded differently. At the very least, language would have been added to address alternative sentences by either distinguishing them from “prior sentence(s) of imprisonment,” or specifically directing how such alternative confinement should be treated under § 4A1.1. Instead, the guidelines contain the “catch all” reference to “sentence[s] not counted in [§ 4A1.1] (a) or (b).”
We rely upon the pronounced sentence because we assume that pronouncement is the best way to determine the sentencing court’s intent. We further assume that the sentencing judge’s intent regarding where a defendant is to be confined is more germane to a subsequent criminal history category-than whether the defendant was actually confined in a prison or jail-type facility as opposed to alternative housing. However, that pronouncement is not necessarily more relevant to a subsequent § 4A1.1 calculation than any accompanying sentencing recommendation. In fact, consideration of the actual place of confinement will often tell a subsequent court far more about a defendant’s background than the precise language used in imposing a prior sentence.
In the cases before us, the sentencing judge did articulate that the defendants were to “undergo an imprisonment [for] ...” a given period. See Maj. Op. at 332-34. In Schnupp’s case, the court added “[alternative housing] as arranged with work release.” In Wormsley’s case, the court stipulated that Wormsley was “permitted Alternative Housing at ARC.... ” Id. Both defendants ultimately served their sentences in the alternative housing rather than the county jail, just as the judge recommended. A brief discussion of the manner in which judges pronounce sentences in Pennsylvania will demonstrate why that is more significant to a subsequent calculation under § 4A1.1 than the manner in which the sentences were pronounced.
Prior to 1990, a state trial judge in Pennsylvania had two options if he/she wanted to impose a sentence of confinement. The judge could either impose a state sentence or a county sentence. 42 Pa.C.S.A. § 9762. If the sentence that was imposed had a maximum period of incarceration of five or more years, it was deemed a state sentence and the defendant had to be incarcerated in a state prison. Such defendants were in the custody and control of the Pennsylvania Bureau of Corrections, and the Bureau therefore determined where the defendant would be incarcerated. If the sentence had a maximum term of less than two years, the defendant was to be “committed *341 to a county prison within the jurisdiction of the court.” 42 Pa.C.S.A. § 9762(3).[11] Therefore, a sentencing judge lost authority to confine a defendant in alternative housing if the defendant received a “state sentence.” However, a judge could sentence such a defendant to alternative housing by imposing a probationary sentence and ordering a certain period of residency at an appropriate alternative facility (including successful completion of inpatient treatment) as a condition of probation.[12]
However, in 1990, the Pennsylvania legislature enacted 42 Pa.C.S.A. § 9763, which specifically permits a court to sentence a defendant receiving a county sentence to intermediate punishment or “partial confinement” in alternative housing such as a halfway house or inpatient program.[13] Accordingly, after 1990, a state judge in Pennsylvania who wanted a defendant to be confined in alternative housing rather than a jail or prison had several options. The judge could still give a probationary sentence and impose the condition of a given period of confinement in alternative housing including an inpatient treatment program. However, the judge could also impose a sentence of less than two years in jail and recommend that the defendant be transferred to alternative housing, or directly pronounce a period of confinement in alternative housing (with or without the component of inpatient treatment). For purposes of a subsequent inquiry under § 4A1.1, the only distinction between those sentences may well have been nothing more than the habits of different judges.
As noted above, the sentences here were pronounced as sentences of imprisonment with a recommendation that they be served in alternative housing, ARC House. However, even assuming that we can therefore conclude that the sentencing judges pronounced a “sentence of imprisonment,” we still learn little about the particular offender. This is true because sentences may be pronounced in a particular manner simply to allow the alternative housing facility to be reimbursed under its contract with a given county. See Commonwealth v. Garbisch, No. CC 20010301 *342 (Pa. Ct. of Common Pleas, Allegheny Cty., filed Feb. 6, 2003).[14]
In Garbisch, the sentencing judge entered into a discussion with the director of the Program for Female Offenders, a program maintained to provide alternative housing and rehabilitation options for female defendants “sentenced to serve periods of incarceration in the Allegheny County Jail.” The program director explained that under the terms of his contract with Allegheny County, the warden of the county jail referred suitable inmates to the program for housing, and the program was then reimbursed by the county.[15] A judge who wanted to confine a defendant at the Program for Female Offenders was therefore compelled to pronounce a sentence of imprisonment in the county jail with a recommendation that she be transferred to alternative housing.[16]
That appears to be what happened in Garbisch, and it may explain why Schnupp’s and Wormsley’s sentences were pronounced as they were. In Garbisch, the court explained:
The program is completely funded by the County through its payments for the housing of inmates there. The County paid for the construction of the facility out of which the Program operates. For all practical purposes, the Program operates as an adjunct to the County Jail. The contract makes it clear that as such an adjunct, its operation is to be supervised by the Warden.... It is the Court that directs the Warden whether a particular defendant may be ... released to serve the sentence at an alternative housing facility....
Garbisch, at *3^1 (citing to 42 Pa.C.S.A. § 9751 et seq.).
The arrangement in Garbisch was dictated to a large extent by the jurisdiction of the Allegheny County Board of Prisons, which had ultimate jurisdiction over the jails in Allegheny County. The Board had, in turn, delegated some of that authority to the warden of the county jail. However, the legislation establishing that Board applies only to Pennsylvania cities of the second class, and therefore excludes most of the jurisdictions in Pennsylvania including the Commonwealth’s largest jurisdiction, Philadelphia. It would therefore have been very misleading to afford sentencing pronouncements in Allegheny County the same significance as pronouncements in Philadelphia County irrespective of any accompanying recommendation by the sentencing judge.
By way of further illustration, I note that my colleagues cite part of the discussion that occurred between the sentencing judge in Schnupp’s case and John Ross, ARC’S director of admissions. Ross explained the relationship between his program and the courts in Allegheny County. He explained that judges “sentence[ ] everybody to the Allegheny County Jail for a term of imprisonment and recommend[] alternative housing. It’s up to the jail to determine whether or not they would be eligible for alternative housing and Ms. Schnupp was.” Maj. Op. at 336 n.8. That *343 arrangement arises from the particular relationship of county, sentencing judge, and program as well as the jurisdiction of the Allegheny County Board of Prisons.
I delve into this level of detail because it demonstrates the problems that are endemic in attaching too much significance to the manner of pronouncing an earlier sentence and ignoring an accompanying recommendation when subsequently attempting to calculate a sentence under § 4A1.1. If a defendant had been sentenced in Pennsylvania when a judge who wanted to impose a custodial sentence in alternative housing had to sentence a defendant to the county jail, “a sentence of imprisonment” may well have been pronounced with an appropriate “recommendation” for alternative housing. On the other hand, the defendant may have received an identical sentence pronounced as a sentence of probation conditioned upon residence in alternative housing or successful completion of an inpatient program.
Although one could argue that it is appropriate to distinguish the former from the latter because one situation involves a pronounced sentence of jail and the other a sentence of probation, that argument loses much of its force when we consider the situation after 1990. After 1990, the sentencing court could simply sentence a defendant to a period of intermediate punishment in alternative housing or an inpatient drug program. See 42 Pa.C.S.A. § 9763(c). Pennsylvania courts have concluded that the Pennsylvania legislature “intended imprisonment and intermediate punishment to be mutually exclusive, to be treated differently.” Commonwealth v. Koskey, 571 Pa. 241, 812 A.2d 509, 513-14 (2002). Accordingly, relying upon the definition of “imprisonment” under the sentencing law of Pennsylvania, a subsequent § 4A1.1 analysis would define the pre-1990 jail sentence with a recommendation for alternative housing as a prior “sentence of imprisonment.” Yet, a subsequent sentence of confinement in alternative housing would not be a “prior sentence of imprisonment” under § 4A1.1. The difference stems from no offender characteristic and it tells us nothing about a prior judge’s assessment of a defendant or the defendant’s level of culpability. Rather, the distinction in the sentences pronounced arises entirely from the intervening change in the,law or, as illustrated by Garbisch, from the contractual relationship of the entities involved in carrying out a “sentence” of alternative housing. Therefore, I can not agree that “[rjeliance on the pronouncement of sentence rather than on the manner or location of service is likely to yield more consistent application of the guidelines.” Maj. Op. at 336.
Moreover, this problem is not unique to Pennsylvania. Rather, the disparity is relevant when comparing various sentences from different states. A cursory comparison of various states’ laws illustrates this.
In Kansas, a judge could not sentence a felony offender to alternative housing under state law at the time the defendant was sentenced in State v. Fowler, 238 Kan. 326, 710 P.2d 1268 (1985). However, as in Pennsylvania before 1990, a judge could accomplish the same result by imposing a period of probation and conditioning the probation upon successful confinement in a residential center. The court in Fowler explained: “[i]f the trial court actually imposes a sentence of commitment and desires to place the defendant in a community corrections residential center, it may do so only by placing the defendant on probation and making confinement in the community corrections residential center a condition of his probation.” Id. at 1274 (emphasis added). The court also stated:
*344 the legislative scheme ... permits a sentencing court to utilize a community corrections center through the process of placing the defendant on probation, but requires that confinement in the county corrections residential center be made a condition of probation. If a defendant is committed under a sentence, the commitment must be made to the custody of the Secretary of Corrections, who may then utilize community corrections facilities by contract in carrying out programs to rehabilitate a convicted felon.
Id. at 1276.
Similarly, in the District of Columbia, prisoners are sentenced to the custody of the Attorney General for a period of time and thereupon placed in the custody of the Corrections Department of the District of Columbia pursuant to a delegation of authority from the Attorney General to the Commissioner of the District. The Commissioner has statutory authority to transfer prisoners “to any available suitable or appropriate institution or facility (including a residential community treatment center)
» [17]
Sentences pronounced under such sentencing schemes will later be “a prior sentence of imprisonment” under U.S.S.G. § 4A1.1 because the prior sentencing judge lacked authority to sentence directly to a community sanctions facility, not because the judge intended to incarcerate a defendant in a jail-type facility. The actual intent to avoid “incarceration” is only revealed through the sentencing court’s recommendation.
However, in Colorado (as in Pennsylvania after 1990), a sentencing judge can simply impose “[a] direct sentence to community corrections ... ”. Beecroft v. Colorado, 874 P.2d 1041, 1045 (Colo.1994).[18] Delaware also gives sentencing courts the authority to sentence directly to confinement in a halfway house or similar facility.[19] See Walt v. State, 727 A.2d 836, 838 (Del.1999). Similarly, in certain instances, Ohio requires that a judge specifically state whether he or she is sentencing a defendant to a community-based facility such as a halfway house. In State v. Salter, 2000 WL 1038178 (Ohio App. Jul. 27, 2000), the court was reviewing a sentence imposed under Ohio Revised Code § 4511.99(A)(4)(a) pertaining to sentencing for drunk driving. The court stated: “When sentencing an offender to a mandatory term of local incarceration, the court shall specify whether the term is to be served in a jail, a community-based correctional facility, a halfway house, or an alternative residential facility.” 2000 WL 1038178 at *1 (internal citation and quotation marks omitted). Similarly, under Ohio Revised Code § 2929.16, Ohio courts are specifically authorized to sentence first degree felons to “non-prison alternatives.” *345 See State v. Winstead, 2004 WL 720331 (Ohio App. Apr.5, 2004).[20] That statute expressly authorizes the trial court to sentence certain felony offenders to a period of confinement in alternative housing. Id. at *3.
Finally, the majority notes that the United States Sentencing Commission has addressed the issue of alternative sentences in the publication Questions Most Frequently Asked About Sentencing Guidelines. As my colleagues note, that publication states:
If the offender was sentenced to imprisonment and as part of the term of imprisonment was placed on work release status, this would be treated as a sentence of imprisonment. If the sentence did not involve a term of imprisonment (e.g., a sentence of probation with a condition requiring residency in a halfway house), the sentence would not be considered imprisonment and would fall under § 4Al.l(c). A sentence of residency in a halfway house is not considered imprisonment....
Maj. Op. at 335.
As I have discussed, this refers to the seemingly straightforward situation of a judge pronouncing a probationary sentence and simply imposing residency in alternative housing as a condition of that probation. However, problems can arise under § 4A1.1 even in this deceptively unambiguous situation. For example, in People v. Sturdivant, 412 Mich. 92, 312 N.W.2d 622, 623 (1981), defendants were sentenced to terms of probation with a condition that six months of the probationary period be served in the county jail.[21] When sentenced, the applicable statute stated, “[a]s a condition of probation, the court may require the probationer to be imprisoned-in the county jail or the house of correction.... ” Id. at 623 n. 1 (emphasis added). It is difficult for me to conclude that such defendants were not sentenced to six months in jail even though a sentence of probation was “pronounced.”
Yet, the rule we announce under U.S.S.G. § 4A1.1 relies on the kind of sentence that is pronounced. This defines the sentence in Sturdivant as a sentence of probation even though the sentencing court clearly intended to sentence the defendants to six months in jail. The intent of the sentencing court is thus lost to the manner of articulation because § 4A1.1 ignores the reality that the precise pronouncement of a sentence is governed by many factors that are irrelevant to an appropriate determination of a criminal history category. Those factors can dictate the manner of pronouncing sentence even as they obfuscate the sentencing court’s actual intent.
The place of confinement is usually more significant than the manner in which a sentence is pronounced because the place of confinement is more indicative of pertinent offender characteristics for purposes of calculating a subsequent sentence under § 4A1.1. Furthermore, I submit that relying upon the place of confinement rather than the manner of pronouncement is of greater, not less, significance if a judge recommends placement while leaving the ultimate decision to an administrator of a community corrections facility or alternative housing. Such administrators are al *346 most always experienced professionals with expertise in rehabilitation and/or treatment programs, and sentencing judges usually lack such expertise. The administrator’s decision to admit a defendant to his/her program says something about the level of threat the defendant poses to the community, the defendant’s potential for successful rehabilitation and his/her ability to cooperate in a therapeutic setting. That assessment is certainly no less important than a court’s pronouncement, and it may be a great deal more important. It can be factored into a § 4A1.1 analysis simply by allowing the recommendation and the place of confinement to be considered when determining “a prior sentence of imprisonment.”
To sum up, I am skeptical that the Sentencing Commission or Congress intended the result we reach today because the rule we apply is inconsistent with the objectives of the sentencing guidelines. It codifies unintended disparities by treating very different sentences alike and very similar sentences differently under § 4A1.1. It erroneously assumes that sentences are pronounced uniformly in all jurisdictions, and that such pronouncements best allow a subsequent court to determine if an earlier sentence was intended to be served in a jail or in alternative housing. In doing so, the rule totally ignores the fact that many factors unrelated to offender characteristics can influence how sentences are pronounced in various jurisdictions.
In United States v. Nelson, 918 F.2d 1268, 1272 (6th Cir.1990), the Court of Appeals for the Sixth Circuit noted that Congress was attempting to eliminate “illogical, unjust and unwarranted disparity” in enacting the guidelines.[22] I can only hope that Congress and the Sentencing Commission will act to eliminate the illogical, unjust and unwarranted disparity that will inevitably accompany widespread use of the pronouncement rule rather than allowing that rule to hold sway. In the meantime, it may be that such problems can only be minimized by judicious use of guideline departures as suggested in Nelson.[23]

.Defendants who were sentenced to a maximum period of incarceration of more than two years but less than five years could be committed to the state prison under the Bureau of Corrections or to a county prison within the jurisdiction of the court, at the discretion of the sentencing judge. 42 Pa. C.S.A. § 9762(2). Thus, when imposing such a sentence, a court also had authority to commit defendants to the Bureau of Corrections for confinement when “facilities become available ... [as] designated by the Governor in proclamations declaring the availability of State correctional facilities....” 42 Pa. C.S.A. § 9762(3).
Therefore, considerations of space could affect how a sentence was pronounced despite my colleagues’ belief that relying upon the pronouncement rather than the place of confinement will negate such extraneous factors as availability of space. See Maj. Op. at 336 ("This discretion in determining a defendant's eligibility for alternate housing may be guided by several factors including assessment of the defendant, availability of space ...”).

. I will elaborate upon the significance of this in greater detail below. For now, it suffices to note that, given sentencing regimes like the one in Pennsylvania prior to 1990, the distinction drawn by the Sentencing Commission in its Supplemental Illustrations on Criminal History Scores between imposing a stay at a halfway house as a condition of probation and pronouncing a jail sentence with a recommendation that the confinement be in a halfway house was often an illusory distinction at best, see Maj. Op. at 334-36, because it often said more about the authority of the sentencing judge than the culpability of the defendant.

. This change in the sentencing scheme is discussed in Commonwealth v. Conahan, 527 Pa. 199, 589 A.2d 1107, 1110 n. 1 (1991).

. Garbisch is an unreported opinion that may be found on the website kept by the Allegheny County Bar Association at http:// www.acba.org/scripts/cr2br.plP/opin-ion/03053004.opn.

. Counties are more than willing to enter into such contracts with appropriate facilities because defendants can usually be housed for less money in the less secure facilities than in the county jail.

.Given the dialogue between the director of the program and the sentencing court, it appears that the Program could not accept inmates directly from court under the terms of its contract or under the administrative structure in Allegheny County at the time.

. This authority is pursuant to a Department of Justice order. See United States v. Venable, 316 A.2d 857, 858 n. 3 (App.D.C.1974).

. Any subsequent consideration of such a sentence under § 4A1.1 is further complicated by the fact that Colorado distinguishes non-residential status at a community correction facility from residential status at a community correction facility. See generally People v. Hoecher, 822 P.2d 8 (Colo.1991). Colorado courts view community corrections programs as providing trial courts "with a sentencing medium that is more severe than probation, but not as harsh as incarceration.” Beecroft, 874 P.2d at 1045.

.However, Delaware also takes the view that such a sentence constitutes "imprisonment” as that word is used in Article IV, Section ll(l)(b) of the Delaware Constitution, id., for purposes of awarding "jail time” credit against a later sentence. For a comprehensive discussion of the four general approaches to awarding jail time credit for confinement in alternative housing see Arizona v. Reynolds, 170 Ariz. 233, 823 P.2d 681, 681-85 (1992).

. Salter and Winstead are unreported. However, I do not cite them for any precedential value. Rather, I refer to them merely because they show the manner in which some sentences have to be pronounced in Ohio.

. It is not clear from the opinion why the judge pronounced the sentence in this manner rather than simply sentencing the defendants to a period of incarceration in the county jail.

. This court was not persuaded by Nelson’s justification of using such departures to eliminate disparities between co-defendants in the same case. See United States v. Seligsohn, 981 F.2d 1418, 1428 (3d Cir.1992). We have, however, relied upon the reasoning to support other propositions. Id.

. It may also be that the kind of discrepancies I am concerned about are the inevitable result of an attempt to systematically quantify every conceivable offender characteristic rather than individualizing sentencing by allowing experienced judges to consider everything he/she deems relevant in a particular case and impose a sentence that the judge believes is fair, consistent with the objectives of criminal sanctions, and in the best interest of the community.
Although the pre-guidelines approach certainly allowed disparity and bias to creep into sentencing, it also allowed judges to distinguish prior sentences of imprisonment from treatment in a custodial facility where appropriate. Amending § 4A1.1 to allow consideration of a prior sentencing recommendation will certainly not transform the guidelines. However, it will at least address one of the disparities that now exist and it can do so without opening the door to the bias that many thought existed before the guidelines were enacted.